UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| HEATHER KETRON, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | No. 2:22-cv-00123-SKL |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
| Defendant. | ) |  |

## MEMORANDUM AND ORDER

Plaintiff Heather Ketron ("Plaintiff") brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her disability insurance benefits ("DIB"). Each party has filed a brief seeking judgment in their favor pursuant to Rule 5 of the Federal Rules of Civil Procedure Supplemental Rules for Social Security [Doc. 11 & Doc. 13]. For the reasons stated below: (1) Plaintiff's request for relief [Doc. 11] will be **DENIED**, and (2) the Commissioner's request that her final decision denying benefits be affirmed [Doc. 12 & Doc. 13] will be **GRANTED**.

I.  ADMINISTRATIVE PROCEEDINGS

According to the administrative record [Doc. 5 ("Tr.")], Plaintiff filed her application for DIB on June 29, 2020. She asserted an amended onset of disability date of April 20, 2020. Plaintiff's claims were denied initially and on reconsideration at the agency level. Plaintiff requested a hearing before an administrative law judge ("ALJ"), which was conducted by telephone due to the COVID-19 pandemic on August 17, 2021. On September 2, 2021, the ALJ found Plaintiff has not been under a disability as defined in the Social Security Act at any time

from the amended alleged onset date of April 20, 2020, through the date of the ALJ's decision. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely filed the instant action.

## II. FACTUAL BACKGROUND

### A. Education and Employment Background

Plaintiff was born September 24, 1985, making her 34 years old on the amended alleged onset date, which is considered a "younger person." 20 C.F.R. § 404.1563(d). She has at least a high school education and is able to communicate in English. She has past relevant work as a nurse practitioner. In the Dictionary of Occupational Titles ("DOT"), this occupation is considered skilled and performed at the light exertional level.

### B. Medical Records

In her June 2020 Disability Report, Plaintiff alleged disability due to depression, anxiety, morbid obesity, mixed connective tissue disease, diabetes, acquired hypothyroidism, hypertension, attention deficit disorder, migraines, and "fatigue and malaise." (Tr. 310). While there is no need to summarize all of the medical records herein, the relevant records have been reviewed.

### C. Hearing Testimony

At the telephonic hearing held August 17, 2021, Plaintiff and a vocational expert ("VE") testified. Plaintiff was represented by counsel at the hearing. The Court has carefully reviewed the transcript of the hearing (Tr. 32-59).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility

"The Social Security Act defines a disability as the 'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can

2

be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Schmiedebusch v. Comm'r of Soc. Sec.*, 536 F. App'x 637, 646 (6th Cir. 2013) (quoting 42 U.S.C. § 423(d)(1)(A)); *see also Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (quoting 42 U.S.C. § 423(d)(1)(A)). A claimant is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Parks*, 413 F. App'x at 862 (quoting 42 U.S.C. § 423(d)(2)(A)). The Social Security Administration ("SSA") determines eligibility for disability benefits by following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v). The five-step process provides:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment—i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities—the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citations omitted). The claimant bears the burden to show the extent of their impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs

3

the claimant is capable of performing. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512-13 (6th Cir. 2010) (citations omitted).

B.  **The ALJ's Findings**

The ALJ found Plaintiff meets the insured status requirements through September 30, 2025. At step one of the five-step process, the ALJ found Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date, April 20, 2020. At step two, the ALJ found, "Plaintiff has the following severe combination of impairments: mixed connective tissue disease; migraines; dermatitis; obesity; attention deficit disorder (ADD); depression; and anxiety" (Tr. 19). The ALJ found Plaintiff's alleged diabetes, hypothyroidism, polycystic ovarian syndrome, hypertension, and obstructive sleep apnea were not severe.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), with the following additional restrictions:

- She is limited to no more than frequent changes to the workplace setting.

- She cannot climb ladders, ropes, or scaffolds.

- She cannot perform any work which requires her to frequently get her hands wet or put them under water.

- She is limited to no more than frequent climbing of ramps and stairs.

- She is limited to no more than frequent contact with coworkers, supervisors, and the public.

- She "can concentrate and remain on task working for 30 minutes and then break posture to sit or stand and then resume working but would not be leaving the workstation and could do this repeatedly."

- She can perform all other postural movements only frequently.

- She cannot work in loud or very loud work environments.

(Tr. 21-22).

At step four, the ALJ found Plaintiff was capable of performing her past relevant work as a nurse practitioner, as that occupation is generally performed and as Plaintiff actually performed it (Tr. 26). In addition, and in the alternative at step five, the ALJ found there were other occupations with jobs existing in substantial numbers in the national economy that a person with Plaintiff's RFC could perform, including medical assistant, surgical technician, and phlebotomist (Tr. 27).

These findings led to the ALJ's determination that Plaintiff was not under a disability as defined in the Social Security Act at any time between the amended alleged onset of disability date and the date of the ALJ's decision (Tr. 27).

## IV. ANALYSIS

Plaintiff argues the ALJ's decision should be reversed and this case "remanded pursuant to Sentence 6 of 42 U.S.C. Section 405(g) for consideration of new and material evidence both sent to the Appeals Counsel after the hearing before the ALJ." [Doc. 11 at Page ID # 1441-42].

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citations omitted). The United States Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning

5

of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also McClanahan*, 474 F.3d at 833. Furthermore, the evidence must be "substantial" in light of the record as a whole, "taking into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (citations omitted).

If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) (citations omitted); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971) (citation omitted). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decision makers because it presupposes "there is a 'zone of choice' within which the Commissioner can act, without the fear of court interference." *McClanahan*, 474 F.3d at 833 (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported

in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sept. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claims of error without further argument or authority may be considered waived).

### B. Sentence Six Standards

The Appeals Council "will review a case" on appeal from an ALJ's decision if it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. § 404.970(a)(5). The Council will only consider the new and material evidence if the claimant shows good cause for not timely submitting the evidence to the ALJ. *Id.* § 404.970(b). Good cause includes being misled by the SSA; having a "physical, mental, educational, or linguistic limitation" preventing earlier submission; or "[s]ome other unusual, unexpected, or unavoidable circumstance" beyond a claimant's control, including the death of an immediate family member, the destruction of important records, or because the source of the evidence failed to produce it despite active and diligent effort on the part of the claimant. *Id.*

When the Appeals Council denies review, as here, "the ALJ's decision becomes the final decision of the Secretary." *Hammond v. Apfel*, 211 F.3d 1269, 2000 WL 420680, at *3 (6th Cir. Apr. 12, 2000) (table) (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)). On appeal, the Court "still reviews the ALJ's decision rather than the Appeals Council's denial of review." *Id.* (citing *Casey*, 987 F.2d at 1233; *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993)); *see also Graley v. Colvin*, No. 1:14-CV-00728, 2015 WL 3935953, at (N.D.

Ohio June 26, 2015) (A "federal court's review is generally limited to the ALJ's decision, not the denial of review by the Appeals Council." (citations omitted)).

Of course, the Court cannot reverse the ALJ's decision based on evidence presented to the Appeals Council but not the ALJ. *Sutton v. Soc. Sec. Admin.*, No. 09-2288, 2011 WL 9482974, at *3 (6th Cir. Apr. 5, 2011) (citing *Cotton*, 2 F.3d at 695-96); *see also Curler v. Comm'r of Soc. Sec.*, 561 F. App'x 464, 472-73 (6th Cir. 2014) ("We have repeatedly refused to consider evidence submitted after the ALJ issued his decision when reviewing that decision for substantial evidence under 42 U.S.C. § 405(g).") (citing *Foster*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996)). The Court can, however, remand a case for further consideration of a claim in light of new evidence, pursuant to sentence six of 42 U.S.C. § 405(g). Such remand "is appropriate 'only if the evidence is "new" and "material" and "good cause" is shown for the failure to present the evidence to the ALJ.'" *Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 509 (6th Cir. 2013) (quoting *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010)); *see also* 42 U.S.C. § 405(g) ("The court may . . . remand the case to the Commissioner . . . and it may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .").

"'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding . . . .'" *Schmiedebusch*, 536 F. App'x at 647 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Evidence is material if it creates "a reasonable probability that the [Commissioner] would have reached a different disposition of the disability claim if presented with the new evidence." *Id.* (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865

8

F.2d 709, 711 (6th Cir. 1988))."'Good cause' is demonstrated by 'a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ.'" *Johnson*, 535 F. App'x at 509 (quoting *Foster*, 279 F.3d at 357). "The claimant bears the burden of showing that all three requirements have been met in order to obtain a remand." *Sutton*, 2011 WL 9482974, at *3 (citing *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 653 (6th Cir. 2009)).

    **C.**    **Evidence Submitted to the Appeals Council**

    **1.**    **Records from Dr. Carroll's Office**

Plaintiff relies first and foremost on evidence from one of her treating physicians, Daniel D. Carroll, M.D., a family medicine practitioner. The record contains a letter from Dr. Carroll dated October 22, 2021 (Tr. 124), which is just under two months after the ALJ issued his decision on Plaintiff's claim. Dr. Carroll's letter provides:

> To whomever it May Concern:
>
>     Mrs. Ketron has been seen on a regular basis secondary to multiple debilitating health conditions. Patient was seen on 4/16/21 at which time she was noted to have anemia with associated severe dermatitis as well as marked anxiety and mixed connective tissue disorder with associated diabetes mellitus.
>
>     Please note, that her history of present illness is done by the nurses on a regular basis and this is dropped from previous notes and therefore it may be unchanged. However, the review of systems is specifically done by the provider as well as is the physical exam and the assessment and plan. Therefore, there was discrepancies between what was said in the physical note as far as describing her physical symptoms and her physical exam. This also was present with the examination that she had on 7/30/21.
>
>     Patient, in my opinion, is completely disabled. I have known Mrs. Ketron for a long period of time and her medical conditions make it to where she is not able to work in any condition. She has always been both an excellent nurse and then when she finished her advanced practitioner degree was an even better nurse practitioner.

> However, she is not able to perform any activities of any type of employment responsibilities.
>
> Our physical exam with associated assessment and plan is correct as well as the review of systems. Once again, the way healthcare is now much of the history of present illness is taken by the nursing staff and then the provider finishes the review of systems, physical exam and assessment/plan. It is in my opinion that she is totally disabled and that she cannot work in any type of position. If you need any additional information, please feel free to contact my office.
>
> Respectfully submitted,
>
> Daniel D. Carroll, MD

(Tr. 124-25). Along with the October 2021 letter, Plaintiff submitted modified records from Dr. Carroll's office for Plaintiff's April 2021 and July 2021 visits. As the Commissioner points out [*see* Doc. 13 at Page ID # 1452-53], the changes appear to be reflected primarily in the summary paragraph near the beginning of the record of these two visits. In Plaintiff's original April 2021 and July 2021 records, the paragraph, which is identical for both visits, states:

> The patient presents for a Follow-Up Visit. The patient feels good with minor complaints, has good energy level, is sleeping well and is gradually improving. The patient has been compliant with instructions. Current medication use: no side effects, compliant with dosing regimen and considered effective by patient. The patient sleeps an average of 6-8 hours per night. Impact of disease: mild overall impact, mild emotional impact, mild impact on recreation, mild impact on relationships, and mild physical impact. Nutrition: well balanced diet and supplemental vitamins. (Tr. 1231; Tr. 1386).

The modified records, which, again, Plaintiff submitted after the ALJ issued his September 2021 decision, provide as follows:

> (Modified April 2021 record): The patient presents for a Follow-Up Visit. The patient states she is very fatigued with low energy. The patient has been compliant with instructions. Current medication use: no side effects and compliant with dosing

> regimen[.] Impact of disease: moderate to severe impact, mild emotional impact, moderate impact on recreation, mild impact on relationships, and moderate to severe physical impact. Nutrition: well balanced diet. (Tr. 126).
>
> (Modified July 2021 record): The patient presents for a Follow-Up Visit. The patient feels fatigued with low energy. The patient has been compliant with instructions. Current medication use: no side effects, compliant with dosing regimen and considered effective by patient. (Tr. 140).

There appear to be a few other changes, too, although Plaintiff does not identify them. For example, the description of Plaintiff's migraines in the modified records states that the "quality of the pain is described as throbbing and stabbing," (Tr. 127), which is not included in the original records from April 2021 (Tr. 1232).

Plaintiff argues the October 2021 letter and the modified medical records constitute "new" and "material" evidence, because the "ALJ specifically relied upon statements made in records of Dr. Carroll to disregard his opinion as to the limitations he placed upon the Claimant." [Doc. 11 at Page ID # 1441]. In particular, Plaintiff contends the evidence shows that Dr. Carroll's opinion regarding Plaintiff's "inability to use her hands for fine manipulation is correct and supported by substantial evidence." [*Id.*].

Plaintiff refers to the following discussion in the ALJ's September 2, 2021, decision:

> On October 13, 2020, Dr. Carroll restricted the claimant to no lifting including below and above shoulder level, pushing or pulling, or carrying greater than 10 pounds. He found that the claimant was unable to perform any fine manipulation with the hands. By letter dated October 23, 2020, Dr. Carroll advised that the claimant could not lift above or below the shoulder level, carry, push, or pull greater than 10 pounds. He indicated that the claimant was unable to do fine manipulation with her hands due to decreased range of motion and mobility. Dr. Carroll stated that the claimant determined that she was not able to work in any capacity in any type of job. In June 2021, it was recorded by her treatment providers at Arthritis Associates of Kingsport . . . that she was limited in treatment options

11

due to her previous gastric bypass and that she should use over-the-counter Voltaren and Tylenol Arthritis. On August 2, 2021, Dr. Carroll advised that the claimant was unable to work in any position. **Of note, his own treatment records for the claimant document that she felt good with minor complaints, had good energy level, and was improving. Dr. Carroll recorded that there were no medication side effects. He documented that the impact of disease was: mild overall impact; mild emotional impact; mild impact on recreation; mild impact on relationships; and mild physical impact.** The claimant received no more than conservative treatment for her mixed connective tissue disease. The evidence shows that the claimant is able to stand, move about, and use her arms, hands, and legs in a satisfactory manner within the assigned residual functional capacity (Exhibits 1F, 2F, 5F, 6F, 7F, 9F, 10F, and 11F). . . .

. . . .

As for medical opinion(s) and prior administrative medical finding(s), the undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources. The undersigned has fully considered the medical opinions and prior administrative medical findings and finds the opinions of the State agency physician rendered in August 2020 concerning the claimant's physical impairments to be unpersuasive because it is not supported by the medical signs and findings or consistent with the medical record in light of the current medical evidence of record. The Administrative Law Judge finds the opinion of the State agency physician rendered in December 2020 regarding physical limitations to be partially persuasive as to light work because this is supported by medical signs and findings, but the undersigned finds that the claimant is somewhat further limited secondary to her severe physical impairments based on the totality of the evidence of record. **The undersigned finds the opinions of Dr. Carroll to be unpersuasive because they are not well supported by medically acceptable clinical signs, findings, and diagnostic techniques and are inconsistent with other medical evidence. Of note is that Dr. Carroll's own physical exams around the dates of his opinions do not show any significant abnormalities. As described above, Dr. Carroll documented that the impact of disease was: mild overall impact; mild emotional impact; mild impact on recreation; mild impact on relationships; and mild physical impact. The claimant received no more than conservative treatment for her mixed connective tissue disease. The evidence shows that the claimant is able to stand, move about, and use her arms, hands, and legs**

> **in a satisfactory manner within the assigned residual functional capacity.**

(Tr. 23-25 (emphasis added)).

Thus, while it is true the ALJ relied in part on the "mild impact" statements on the original 2021 medical records to discount Dr. Carroll's opinions, the ALJ also clearly cited to other reasons for discounting Dr. Carroll's opinions, and the Court finds these reasons are sufficiently articulated and supported by substantial evidence. Those reasons include that Dr. Carroll's own physical exams from the same time period did not reveal any significant abnormalities and that Plaintiff received only conservative treatment. Dr. Carroll did not change his examination findings even when he modified/corrected the April and September 2021 records to change his opinion regarding the impact of Plaintiff's conditions on her emotional state, physical state, relationships, and recreation. In addition, as the Commissioner points out, Dr. Carroll did not modify his earlier observation that Plaintiff's medications did not cause any side effects, and that at least some of Plaintiff's conditions were controlled with what the ALJ characterizes as conservative treatment. Plaintiff does not address these issues, nor does Plaintiff address how the modifications to Dr. Carroll's records would have any impact on the ALJ's decision to partially credit the December 2020 opinion from the State agency physician (Tr. 165-68).

Plaintiff argues the letter and the modified records would likely impact the ALJ's decision not to assign further limitations specifically related to Plaintiff's alleged "inability to do fine motor movements with her hands," and that they would support "her contention of the disabling pain and stiffness lasting hours each day." [Doc. 11 at Page ID # 1439]. But Dr. Carroll did not modify the pages Plaintiff cites here, and the ALJ found that the only appropriate limitations related to Plaintiff's hands were light work where Plaintiff's hands could remain dry [*see id.* (citing Tr. 145

13

& Tr. 1391); *see also Pipho v. Comm'r of Soc. Sec.*, No. 14-cv-11273, 2015 WL 4527986, at *5 (E.D. Mich. July 27, 2015) (finding that new evidence "relating to [the claimant's] sciatica" was not material, where ALJ "recognized sciatica as one of [the claimant's] impairments")].

In addition, Plaintiff has not shown good cause for failing to obtain and present the evidence at the hearing before the ALJ. The original records date from April and July 2021, the hearing before the ALJ took place on August 17, 2021, and the ALJ issued the written decision on September 1, 2021. Although technically the October 2021 letter and the modifications to the medical records post-date the hearing and the ALJ's decision, the letter and the modifications pertain to the earlier-dated evidence. *See Heart v. Comm'r of Soc. Sec.*, No. 22-3282, 2022 WL 19334605, at *3 (6th Cir. Dec. 8, 2022) ("Because Dr. Wornock refers only to Heart's medical history prior to the hearing before the ALJ, Heart has not provided a reasonable justification for failing to obtain and present the letter to the ALJ."). To show "good cause" for failing to present the evidence to the ALJ, a claimant must demonstrate "a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (citation omitted). Plaintiff, who bears the burden on this issue, does not provide any reason why she failed to obtain the modified records and the corresponding letter from Dr. Carroll prior to the hearing, let alone a "reasonable justification." *See Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986) (noting the Sixth Circuit has taken a "harder line on the good cause test" and holding a claimant "must give a valid reason for [their] failure to obtain evidence prior to the hearing").

### 2. Additional records

Plaintiff also submitted more recent, post-decision records from Dr. Carroll's office, including from November 12, 2021, December 9, 2021, and March 2, 2022, appointments; as well

14

as post-decision records from Duke Rheumatology South Durham, dated January 6, 2022; and post-decision records from Arthritis Associates of Kingsport, PLLC, dated November 4, 2021, December 16, 2021, and May 10, 2022.

The Commissioner argues that because these records post-date the ALJ September 2, 2021 decision, they "do not relate to the Plaintiff's condition during the period at issue" and therefore do not justify remand under sentence six because they are not material [Doc. 13 at Page ID # 1455]. "A claimant's condition and treatment subsequent to the date of decision is intrinsically irrelevant." *Haack v. Comm'r of Soc. Sec.*, No. 2:16-CV-14304, 2018 WL 4906605, at *2 (E.D. Mich. Mar. 20, 2018) (citing *Sizemore*, 865 F.2d at 712), *report and recommendation adopted*, 2018 WL 4658995 (E.D. Mich. Sept. 28, 2018); *see also Reynolds v. Berryhill,* No. 3:16-CV-458-JRG-CCS, 2017 WL 4172625, at *8 (E.D. Tenn. Aug. 31, 2017) (holding that imaging studies dating between three and six months after the ALJ's decision were not material), *report and recommendation adopted*, 2017 WL 4172144 (E.D. Tenn. Sept. 20, 2017). Furthermore, "[e]vidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 685 (6th Cir. 1992).

In her brief, Plaintiff argues:

> There is no doubt the claimant had symptoms as of her alleged onset date that were undiagnosed and properly treated. The claimant has a great work history maintaining a nurse practitioners license. She made a good income and this disease/condition has corrupted her life making it impossible on some days to get out of bed due to the stiffness and pain. (TR 39, 42, 44) She has migraines at least 5x per month that prevent her from working during the period in which they last extending from hours to days. (TR 49) She must lay down daily due to the immense fatigue both mental and physical she experiences. (TR 44) The Tizanidine makes her tired and weak. (TR 43) All of these limitations when brought in to

15

> light as being associated with both the fibromyalgia and connective tissue disorder buttress claimant's testimony and support for the opinion of Dr. Carroll.

[Doc. 11 at Page ID # 1443-44].

Nevertheless, Plaintiff does cite to any evidence in the record to support her contention that the new records reflect her condition as of the alleged onset date or any point in time prior to the ALJ's decision. While Plaintiff cites to instances where she has complained of fatigue, memory problems, mental fog, pain, depression/anxiety, rashes, and migraines [*id.* at Page ID # 1443], she does not explain how the new records connect to those past complaints, or why the new records do not simply reflect, at most, an alleged deterioration of Plaintiff's condition over time.

Plaintiff cites to Social Security Ruling ("SSR") 12-2p, which pertains to evaluations of fibromyalgia. The Commissioner does not directly address SSR 12-2p in her response and only briefly mentions fibromyalgia [*see* Doc. 13 at Page ID # 1455]. However, Plaintiff does not address any connection or overlap between her mixed connective disease and her alleged fibromyalgia, nor does she specify any additional limitations related specifically to fibromyalgia as opposed to Plaintiff's other symptoms and conditions. Regardless, the ALJ certainly considered the fibromyalgia-related complaints Plaintiff cites in her brief. *See Hill v. Comm'r of Soc. Sec.*, 560 F. App'x 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition[.]"). Indeed, the ALJ included additional limitations in Plaintiff's RFC based at least in part on Plaintiff's subjective complaints (Tr. 25 (finding State agency physician's opinion is "supported by medical signs and findings," but assessing greater limitations "based on the totality of the evidence of record")).

In addition, Plaintiff did not identify fibromyalgia as one of her allegedly disabling conditions, despite Dr. Carroll stating in his October 2020 that Plaintiff "does have a concurrent

16

diagnosis of fibromyalgia which causes extreme tiredness, fatigue ability and joint pain." (Tr. 1230). This further supports the Commissioner's undisputed argument that the newer medical records indicate, at most, a worsening of Plaintiff's condition, and therefore they do not justify remand under applicable rules and regulations. *See Elms v. Comm'r of Soc. Sec.*, No. 16-10180, 2017 WL 4120097, at *8 (E.D. Mich. Sept. 18, 2017) (finding records that post-date the ALJ's decision by six months do not justify remand, noting: "Where a claimant believe[s] that his condition has worsened subsequent to the administrative determination, the remedy is to make a new application for benefits.").

Plaintiff's allegedly "new" and "material" evidence may be evidence of a worsening condition. However, as addressed above, "it is well established that a sentence six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing." *Swain v. Comm'r of Soc. Sec.*, No. 5:21-CV-01542, 2022 WL 3088491, at *25 (N.D. Ohio July 8, 2022), *report and recommendation adopted*, 2022 WL 3083028 (N.D. Ohio Aug. 3, 2022); *accord Rollins v. Comm'r of Soc. Sec.*, No. 4:15-CV-01018, 2016 WL 2853864, at *17 (N.D. Ohio May 16, 2016) ("However, a sentence six remand is not appropriate to consider evidence that a claimant's condition worsened after the administrative hearing." (citing *Walton v. Astrue*, 773 F. Supp. 2d 742, 753 (N.D. Ohio Jan. 18, 2011))). To be material, any new evidence must be probative of the severity of a claimant's symptoms during the period considered by the ALJ. *E.g., Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 478 (6th Cir. 2003). If Plaintiff's condition has deteriorated since the administrative hearing, "an appropriate remedy would be the initiation of a new claim for benefits as of the date that her condition rose to the level of a disabling impairment." *Rollins*, 2016 WL 2853864, at *17 (citing *Sizemore*, 865 F.2d at 712).

17

### 3. Remand is Not Justified Under Sentence Six

In sum, after considering the arguments articulated by Plaintiff, the Court does not find that Plaintiff has made a sufficient showing to justify remand under sentence six. The record does not reflect "good cause" for Plaintiff's failure to seek out and provide the modified medical records to the ALJ before the hearing or the issuance of the written decision. Further, these records do not call into question other reasons relied upon by the ALJ to discount Dr. Carroll's opinions; nor do they dispel the ALJ's assessed RFC. As for the more recent medical records, Plaintiff has not met her burden of showing they reflect Plaintiff's condition and limitations during the relevant time.

### D. Remand is Not Justified Under Sentence Four

As the Commissioner emphasizes, Plaintiff does not make a sentence four challenge to the ALJ decision. Instead, as addressed above, Plaintiff focuses her argument on the sentence six challenge and the updated letter and records from Dr. Carroll and other more recent medical evidence. Accordingly, Plaintiff has waived any sentence four challenge. Nevertheless, the record and the ALJ's decision indicate the ALJ properly evaluated Plaintiff's alleged symptoms, weighed the opinion evidence, and considered all of the evidence in the record to arrive at a well-reasoned RFC. In addition, the written decision reflects a "logical bridge between the evidence and the conclusion that the claimant is not disabled." *Gilliam v. Astrue*, No. 2:10-CV-017, 2010 WL 2837260, at *3 (E.D. Tenn. July 19, 2010) (citation omitted). Accordingly, the Court will not further address whether the ALJ's decision is supported by substantial evidence.

Because the ALJ had "the enormous task of making sense of the record, reconciling conflicting medical opinions and evidence, and weighing the credibility of [Plaintiff's] subjective complaints," *Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001), this Court's review is limited to whether the ALJ relied on evidence that "a reasonable mind might accept as adequate to support a

18

conclusion." *Johnson v. Comm'r of Soc. Sec.*, No. 21-1384, 2022 WL 740692, at *2 (6th Cir. Jan. 4, 2022) (quoting *Biestek*, 139 S. Ct. at 1154). In assessing Plaintiff's RFC, the ALJ explained the evidence that supported his conclusion and why he considered certain evidence less persuasive, and the Court finds the ALJ's findings and conclusions are adequately supported. *See Schmiedebusch*, 536 F. App'x at 646 ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . ." (citation omitted)).

## V. CONCLUSION

For the foregoing reasons, it is **ORDERED** that:

(1) Plaintiff's request for relief [Doc. 11] is **DENIED**; and

(2) the Commissioner's request that her final decision denying benefits be affirmed [Doc. 12 & Doc. 13] is **GRANTED**.

SO ORDERED.

ENTER:

s/ *Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE